No. 34,353

BURTON PUGH et al., *Appellants*, v. THE CITY OF TOPEKA, *Appellee*.

(99 P. 2d 862)

Opinion filed March 9, 1940.

*Edward Rooney, Jacob A. Dickinson, W. Glenn Hamilton, E. R. Sloan, F. A. Sloan, Eldon Sloan* and *Edward Rooney, Jr.,* all of Topeka, for the appellants.

*Mark L. Bennett,* city attorney, and *Harold E. Doherty,* assistant city attorney, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action by a municipality to condemn land for airport purposes. The matter was heard by a jury, a verdict rendered, and a new trial granted upon motion of the city. From the order granting a new trial and from other orders, to which reference will later be made, the landowners appeal.

The Pughs, the appellants, were owners of a quarter section of land near the city of Topeka, Kan. In 1929 they started operations to convert the land into an airport. For reasons which will hereafter appear, it is not necessary to recite the facts in detail. Suffice it to say that in December, 1933, appellants leased the property to the city of Topeka for a term of five years at a stated annual rental with option to purchase at a stipulated price. In December, 1937, about a year before the expiration of the lease, the city started condemnation proceedings for the purpose of acquiring the property for a municipal airport. In the meantime substantial improvements had been put upon the land by the city and by the federal government. Appraisers were regularly appointed, made their award, from which the landowners appealed to the district court. The landowners filed a motion asking the court to add to the judgment and verdict the sum of $70,000 expended to cover improvements by the city and the federal government prior to the condemnation. This motion was overruled. The city filed a motion for a new trial, which was sustained, and from both orders the landowners appeal. Thereafter the landowners filed in the action a petition for a declaratory judgment on questions of law involved in the case and judgment thereon was given, to which later reference will be made.

The principal matters argued relate to the proper basis of valuation of the property, to the competency of witnesses testifying to such values and to the matter of the improvements. But we are confronted at the outset with important preliminary questions.

The first question is whether, under the facts shown and under the

principles heretofore laid down by this court, the order of the trial court granting a new trial should be overruled. The motion for a new trial was filed on May 26, 1938, and the motion to add the value of the improvements to the judgment was filed on May 27, 1938. On December 28, 1938, the trial judge addressed a letter to the attorneys for both parties stating that he had given a great deal of consideration to the motions, together with the briefs that had been filed and the authorities that had been cited, and stated, "I have come to the conclusion that I cannot let the verdict of the jury stand for the reason that there are so many things in connection with the verdict that I cannot approve." He followed this declaration by stating that in arriving at his conclusion he had been seriously concerned with the theory upon which the matter had been submitted, and he discussed the question of whether the land was to be valued as land or as an airport and the competency of certain witnesses who had testified. Appellants argue that the trial court was in error as to the law on this matter, that such alleged misunderstanding of the law was the only reason given for granting a new trial, that therefore the order granting a new trial should be set aside. The principal trouble with this contention is that while the trial court only particularized with reference to one or two matters of law, it stated, "There are so many things in connection with the verdict that I cannot approve." Moreover, while the journal entry refers to the letter heretofore referred to, the finding itself was:

"The court finds that the motions of the city of Topeka for a new trial and to set aside the verdict should be sustained for the reason that the court is not satisfied with said verdicts and does not approve them."

That situations might exist which would justify setting aside an order granting a new trial, we need not discuss. But certainly appellants carry a heavy burden where the trial court stated that the verdict was set aside because it did not approve it. This court has many times said that it is the duty of trial courts to exericse a judicial judgment in the matter and if it does not approve the verdict to disapprove it. (*Claggett v. Phillips Petroleum Co.*, 146 Kan. 846, 847, 73 P. 2d 1015; *Durkin v. Kansas City Public Service Co.*, 138 Kan. 558, 562, 27 P. 2d 259; *Manker v. Tough*, 79 Kan. 46, 98 Pac. 792, syl. ¶ 5; *Clark v. Southwestern Greyhound Lines*, 146 Kan. 115, 69 P. 2d 20, and the cases cited in the above opinions.) If the trial court had clearly stated in the instant case that a new trial was granted solely on a question of law, the statement being ac-

companied by a definite holding upon the matter, a different question would be presented. But the trial court did not do that. It stated that there were many things in connection with the verdict which it could not approve. On such a record the order granting a new trial must be permitted to stand.

The question of the improvements, raised by appellants' motion, being at issue in the trial to be held, does not require our consideration at this time.

About a month after a new trial had been granted and appeal taken to this court plaintiffs filed in the same action a petition for a declaratory judgment on points of law involved in the case. The court rendered judgment thereon, holding that the real estate being condemned by the city was not to be appraised as an airport, but as land; that witnesses qualifying only as to valuation of airports and not qualifying to testify as to "land" values are incompetent, and that appellants are not entitled to recover for the improvements placed on the land by the city in connection with the United States government prior to the condemnation and during the lease period.

From such declaratory judgment, as well as from the order granting a new trial, appeal was taken.

The questions of law passed upon by the trial court in its declaratory judgment are questions directly involved in the main action. We are confronted at once, therefore, with the question of whether in such a situation the declaratory judgment act is properly invoked. The Kansas act (G. S. 1935, 60-3132) provides:

"This act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; and it is to be liberally interpreted and administered with a view to making the courts more serviceable to the people."

It thus appears that the declared purpose is to furnish a means of enabling those who have an actual and substantial controversy to have their respective legal rights judicially determined without such invasion of rights as to precipitate an immediate cause of action. That fundamental purpose provides a wide field of usefulness. We would encourage rather than curb the relief contemplated by the act, and within its proper and useful function would promote the liberal interpretation and administration which the act itself enjoins. But does the act contemplate its use simply as an adjunct to

a cause of action then being actually adjudicated and wherein ordinary and adequate remedies are being invoked?

A substantially similar question was presented and briefly treated in the case of *Hudson v. Travelers Ins. Co.*, 145 Kan. 732, 67 P. 2d 593. The plaintiff there in an action on an accident insurance policy sought to join as a third cause of action under the declaratory judgment act the same allegations that were contained in the first and second causes of action. Such joinder was not permitted, and it was held that "there is no sound purpose in invoking declaratory relief where the only object is the decision of questions already pending before the court in other causes of action." Commenting on the case of *Railroad Bldg., Loan & Savings Ass'n v. Grayum*, 136 Kan. 418, 15 P. 2d 405, wherein joinder of a cause of action under the declaratory judgment act had been permitted, the court said:

"It (*Railroad Bldg., Loan & Savings Ass'n v. Grayum*) was based on an unusual state of facts, and the doctrine there laid down is not to be extended."

An examination of many cases in other jurisdictions, under similar statutes, shows an overwhelming weight of authority in support of the proposition that declaratory relief is conditioned upon the absence of any other adequate or practicable remedy and that it is not to be used merely as a substitute for ordinary actions, either at law or in equity. Particularly is its use not sanctioned in another action where the same issues are actually being determined. The rule is thus stated in 16 Am. Jur. 295:

"The courts will ordinarily refuse to entertain an action for a declaratory judgment as to questions which are determinable in a pending action or proceeding between the same parties. A declaratory judgment is not a proper mode of determining the sufficiency of legal defenses to a pending action. A disputed question of law or procedure raised in a pending suit is not such an actual controversy as comes within the letter, reason, or spirit of the declaratory judgments act."

This view, generally held, may be illustrated by a few typical comments:

"An action for a declaratory judgment should be dismissed where, at the time of its commencement, there was pending a proceeding between the same parties in which all the questions concerning which a declaration was asked could have been determined.—*Colson v. Pelgram*, 259 N. Y. 370, 182 N. E. 19."

"A declaratory judgment proceeding is not a substitute for either actions at law or in equity.—*Grosse Pointe Shores v. Ayres*, 254 Mich. 58, 235 N. W. 829."

". . . it was never intended as a substitute for a new trial, or other steps that the code requires to be taken in the same action, or for an appeal to the

court of appeals. Hence, where matters concerning the construction of a will have been determined in a partition proceeding, the court will not entertain jurisdiction of a petition for a declaration seeking a different construction of the will.—*Back's Guardian v. Bardo*, 234 Ky. 211, 27 S. W. 2d 960."

"A declaratory judgment is not a proper mode of determining the sufficiency of legal defenses to a pending action.—*Slowmach Realty Corp. v. Leopold*, 236 App. Div. 330, 258 N. Y. Supp. 500."

"The court's discretionary power to refuse declaratory relief is properly exercised where it appears that the issues raised by a cross complaint seeking such relief, filed in an action on a promissory note, can be readily determined in the trial of the special defenses raised in the answer.—*Welfare Invest. Co. v. Stowell*, 132 Cal. App. 275, 22 P. 2d 529."

". . . such an action will not be entertained where it appears that an immediate cause of action exists between the parties for which one of the ordinary legal remedies is available.—*Kaleikau v. Hall*, 27 Haw. 420."

". . . a disputed question of law or procedure raised in a pending suit is not such an actual controversy as comes within the letter, reason, or spirit of the declaratory judgment act.—*Jefferson County, ex rel. Coleman, v. Chilton*, 236 Ky. 614, 33 S. W. 2d 601."

"Where there is no necessity for resorting to the declaratory judgment, it should not be employed.—*James v. Alderton Dock Yards*, 256 N. Y. 298, syl. ¶ 4, 176 N. E. 401." (87 A. L. R. 1219-1221.)

The parties to the instant controversy may naturally feel that it would be desirable to have a declaration now on questions of law said to be involved, even though those questions may assume a quite different aspect as the actual trial develops. But certainly in the absence of very unusual circumstances or emergency features such procedure is not within the contemplation of the act. We are asked, in effect, to act in an advisory—or rather a supervisory—capacity to the trial court in a case about to be heard. The use of the act for such purposes would in many instances complicate actions and delay rather than expedite the final determination of issues. Moreover, the general adoption of such a practice would impose an unwarranted burden upon the courts.

The order granting a new trial is affirmed and the appeal from the declaratory judgment is dismissed.